UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BRENDA BYNOE,

                              Plaintiff,        **MEMORANDUM AND ORDER**
                                                              1:10-CV-01283 (SLT)(MDG)
     -against-

TARGET CORPORATION,

                              Defendant.
-----------------------------------------------------------------x

**TOWNES, United States District Judge:**

       Brenda Bynoe ("Plaintiff"), a resident of New York state, commenced this action on January 29, 2010 in the Supreme Court of the State of New York, Kings County, against Target Corporation ("Defendant" or "Target"), a Minnesota corporation, seeking damages for personal injury after she slipped and fell on a puddle of syrup that originated from a DelMonte fruit cup while shopping at one of Defendant's stores located in Brooklyn, New York. The action was removed to this Court on March 22, 2010 on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332, 1441. On November 30, 2011, Defendant moved for summary judgment, contending that Plaintiff failed to adduce significantly probative evidence to support a *prima facie* case for her premises liability claim. For the reasons discussed below, Defendant's motion for summary judgment is granted.

## *BACKGROUND*

       On May 9, 2009, Plaintiff went shopping at a Target store located in Brooklyn, New York. (Defendant's Rule 56.1 Statement ("Def. 56.1 Statement") at ¶ 1; Pl.'s Rule 56.1 Statement & Counter-Statement ("Pl. 56.1 Statement") at ¶ 1; Pl. Dep. at pp.80-84). Sometime between approximately 7:30 p.m. and 8:15 p.m. on that day, Plaintiff slipped and fell in market aisle E41 due to the presence on the floor of a puddle of spilled syrup that originated from a Del Monte fruit cup stocked in that aisle. (Def. 56.1 Statement at ¶ 1; Pl. 56.1 Statement at ¶ 1). She

1

suffered multiple bone fractures as a result of the fall. (Pl. Dep. at pp.161, 163, 189-90; Ex. D at pp.11-12; Ex. E at pp.4-8). Abihail Yisrael, a manager at the subject Target store, came to Plaintiff's aid following the incident, completed an incident report, and arranged for Plaintiff's transportation to the emergency room at Beth Israel Hospital. (Yisrael Dep. at p.30-31; Ex. F (Target Guest Incident Report) at pp.7-8; Pl. Dep. at pp.85, 148-90).

At her deposition, Plaintiff testified that the syrup puddle upon which she slipped and fell appeared to be approximately ten to twelve inches in size[1] and was "running like a circle . . . and it was coming out . . . ." (Pl. Dep. at p.94; Def. 56.1 Statement at ¶ 2). Furthermore, Plaintiff stated that the puddle "was like a broken circle, like it was going out" and part of the syrup was "[r]unning, like it was running, it was moving, it was running out." (Pl. Dep. at p.95). It is undisputed that the spilled liquid was clear in color, did not have any footprints, tracks or wheel marks in it, through it or around it, and did not appear dirty. (Juerakhan Statement at ¶ 6; Julien Statement at ¶ 6; Pl. Dep. at pp. 93,104; Def. 56.1 Statement at ¶¶ 2, 4; Ex. F (Target Guest Incident Report) at p.5). Two independent witnesses present at the scene of the accident testified that "[t]he liquid looked fresh" and that "the spill was very recent". (Juerakhan Statement at ¶ 6; Julien Statement at ¶ 6). The witnesses additionally stated that "no part of [the puddle] looked like it was dried." (*Id.*) In contrast, Plaintiff testified that the substance on the floor appeared "sticky and mushy" and was "liquid and becoming gluey." (Pl. Dep. at pp.81, 93). No spilled fruit was present on the floor at the time of the accident. (Def. 56.1 Statement at ¶ 6; Pl. Dep. at

---

[1] However, Oris Juerakhan and Keena Julien, mother-and-daughter shoppers who were present near the scene of the incident, noted in their respective independent witness statements that the spilled syrup appeared to be "a very small amount, less than the size of [their] hand[s]." (Juerakhan Statement at ¶ 6; Julien Statement at ¶ 6).

2

p.96). However, two empty DelMonte fruit cup containers were found on the floor in aisle E41, and both containers had been opened and emptied, with their lids removed. (Def. 56.1 Statement at ¶ 6; Pl. 56.1 Statement at ¶ 6; Ex. F at p.6; Pl. Dep. at pp.96-97; Yisrael Dep. at pp.31-32)

There is no evidence of any prior slip-and-fall incidents involving spilled syrup at the subject Target store. (Pl. Dep. at p.140; Pl. 56.1 Statement at ¶ 8; Def. 56.1 Statement at ¶¶ 8, 9). In addition, both Plaintiff and an independent witness testified that the shelves in market aisle E41 usually appeared orderly.[2] (Pl. Dep. at p.102; Juerakhan Statement at ¶ 8; Def. 56.1 Statement at ¶ 5; Pl. 56.1 Statement at ¶ 3). One of the two independent witnesses, a regular shopper at the store, explicitly stated that "the products being sold on the shelves looked orderly" and that "[t]he fruit cups being offered for sale did not look disorganized or messy" around the time of the incident. (Juerakhan Statement at ¶ 8). However, Plaintiff testified that on the day of the incident, the fruit cups were "not neatly packed, stocked." (Pl. Dep. at p.102). Similarly, Yisrael, the store manager, testified and conceded that the fruit cup packages on the shelves were not neatly stacked on the date of the accident. (Yisrael Dep. at p.71).

At her deposition, Yisrael also testified that storewide inspections were routinely performed on an hourly basis, with each inspection taking thirty minutes per level at the two-level store. (Yisrael Dep. at pp.16-19, 36, 38, 43). The inspections involved continuously walking throughout the store to ensure cleaning up of debris, spills and foreign merchandise and zoning of end caps, i.e., organization of the first part of each aisle facing the guests. (Yisrael Dep. at pp.16-20). During the closing shift, which was the shift during which the accident

---

[2] However, an unsworn letter dated November 10, 2010 from Karlene Spencer, a regular shopper at the subject Target store, to Plaintiff's counsel states that market aisle E41 is "always messy". (Ex. D).

3

occurred, two people would perform such inspections of store premises simultaneously. (Yisrael Dep. at pp.18-19). Yisrael testified that on the date of the accident, she personally performed the routine inspections at the required intervals, including inspections of level one, where market aisle E41 was located. (Yisrael Dep. at pp. 34, 39). She further testified that she had in fact just completed another routine inspection of level one approximately ten minutes before she learned of the slip-and-fall incident. (Yisrael Dep. at pp. 34-35).

## *DISCUSSION*

### *Standard of Review*

Plaintiff's complaint alleges only a New York state law claim; that she sustained injuries as a result of Target's negligent maintenance of its premises. Nonetheless, "the Supreme Court has made clear that federal courts must apply state substantive law and federal procedural law in diversity actions." *Kaufman v. Guest Capital, LLC*, 386 F. Supp. 2d 256, 264 n.7 (S.D.N.Y. 2005) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding a summary judgment motion, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the party moving for summary judgment demonstrates that there are no genuine issues of material fact,

"the nonmoving party, must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002) (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995)). The nonmoving party cannot simply rest upon "conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id.*

When deciding a summary judgment motion, a trial judge is not required to make factual findings. *Anderson*, 477 U.S. at 250. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*

### *Plaintiff's Premises Liability Claim*

"In order for a plaintiff in a slip-and-fall case to establish a prima facie case of negligence against the property owner, the plaintiff must demonstrate (a) that the defendant created the condition that caused the accident, (b) that the defendant had actual knowledge of the condition, or (c) that the defendant had constructive notice of the condition." *Cassiera v. Target Corp.*, 2010 WL 2793778, at *2 (E.D.N.Y. Jul. 12, 2010) (citing *Kraemer v. K-Mart Corp.*, 641 N.Y.S.2d 130, 130 (2d Dep't 1996)). Plaintiff does not contend that Defendant or an employee of Defendant caused the syrup spill, or that anyone employed by Defendant possessed actual knowledge of the spill.

Therefore, the sole disputed issue is whether "a reasonable jury could find that [Defendant] had constructive notice" of the syrup spill. *Cassiera*, 2010 WL 2793778, at *2. "To constitute constructive notice, a defect must be visible and apparent and it must exist for a

sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 2008 WL 2329302, at *2 (2d Cir. 2008) (quoting *Gordon v. Am. Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986)). "Further, a general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused plaintiff's fall." *Id.* (quoting *Piacquadio v. Recine Realty Corp.*, 646 N.E.2d 795, 796 (N.Y. 1994)) (internal quotation marks omitted).

Additionally, "when a landowner has actual knowledge of the tendency of a particular dangerous condition to reoccur, [it] is charged with constructive notice of each specific reoccurrence of that condition." *Weisenthal v. Pickman*, 545 N.Y.S.2d 369, 371 (2d Dep't 1989)). The relevant condition must, however, be in the nature of "a regular recurrence of hazards in [a] distinctly identifiable area." *Riley v. Battery Place Car Park*, 2006 WL 3826729, at *1 (2d Cir. Dec. 21, 2006). In sum, there are two ways in which a plaintiff can establish constructive notice on the part of the defendant: either (i) by demonstrating that the defective condition (a) was visible and apparent and (b) had existed for a sufficient length of time to permit the defendant to discover and remedy the condition, or (ii) by demonstrating that the defect is a recurring condition.

In the instant case, the parties do not dispute that the spilled syrup present on the floor of aisle E41 of the subject Target store around the time of the accident was visible and apparent. The parties, however, disagree as to (1) whether the spilled syrup had been present for a sufficient length of time for purposes of imputing constructive notice to Defendant, and (2) whether syrup spills caused by DelMonte fruit cups stocked in aisle E41 constitute a recurrent condition for purposes of establishing constructive notice on the part of Defendant.

**Length of Time for Which the Dangerous Condition Had Been Present**

As evidence that it lacked constructive notice of the syrup spill based on the length of time the spill had existed, Defendant provided the sworn statements of two independent witnesses who were present at the scene of the accident and the testimony of Abihail Yisrael, the store manager who was performing regular storewide inspections on the evening of the accident. Oris Juerakhan, one of the independent witnesses, made the following observations regarding the spill:

> The liquid looked fresh to me because it did not have any footprints, tracks, or wheel marks in it, through it or around it, and I did not see any dirt in it. None of the small puddle looked like it was dried. It looked like the spill was *very recent* based upon what I saw.

(Juerakhan Statement at ¶ 6) (emphasis added). Similarly, Keena Julien, the other independent witness,[3] stated, "The liquid looked fresh to me. It did not have any footprints, tracks, or wheel marks in it, through it, or around it. It did not look dirty and no part of it looked like it was dried." (Julien Statement at ¶ 6).

Consistent with the statements of the independent witnesses, Yisrael testified that she had just completed an inspection of level one of the store, during which she passed by market aisle E41, "approximately ten minutes before the incident". (Yisrael Dep. at pp.34-35). Yisrael also indicated that it would normally take her ten minutes to walk from the cosmetics section, the starting point for all routine inspections, to market aisle E41 and, consequently, another twenty minutes to complete the remainder of the same lap. (Yisrael Dep. at pp.42-44). Thus, as a matter of logic, the last time at which Yisrael inspected aisle E41 would have been approximately thirty minutes prior to the accident: i.e., twenty minutes to completion of the

---

[3] Oris Juerakhan is Keena Julien's mother. (Juerakhan Statement at ¶ 3; Julien Statement at ¶ 3). The mother-daughter pair was shopping in the vicinity of market aisle E41 when the slip-and-fall accident occurred. (*Id.*)

7

routine inspection, plus ten minutes after the completion of the inspection before she was paged regarding the accident. (Yisrael Dep. at pp. 43-44; Pl. 56.1 Statement at ¶ 12; Pl. Expert Dep. at p.62).

Although the sworn statements of the independent witnesses and the testimony of the store manager "would undoubtedly be important evidence for a jury to consider at a trial, the jury would hardly be *required* to credit it." *Casierra*, 2010 WL 2793778, at *2 (emphasis in original). Nevertheless, "Target has met its initial burden" of producing evidence suggesting that the spilled syrup had not existed for a significant amount of time prior to the accident, and Plaintiff is "required to produce [countervailing] evidence of constructive notice". *See Casierra*, 2010 WL 2793778, at *2. It therefore falls to Plaintiff to demonstrate that there exists a material issue of fact regarding Target's notice. *See id.* ("Successful slip-and-fall plaintiffs meet their burden in different ways, often by producing circumstantial evidence that the defective condition existed for a period of time before the accident.").

Here, Plaintiff has failed to adduce evidence to contradict the independent witnesses' statements that the spilled syrup in question had no dirt, footprints, tracks or wheel marks in it, which tends to suggest that the spill was "very recent." (Juerakhan Statement at ¶ 6; Julien Statement at ¶ 6). Plaintiff has likewise not submitted proof to contravene the store manager's testimony that routine inspections take place on a continuous basis throughout the store, with each inspection at each level of the store taking thirty minutes. (Yisrael Dep. at pp.18-19). Plaintiff has therefore failed to proffer sufficient evidence to support an inference that aisle E41 had not been adequately maintained and inspected for syrup spills.

The court also finds unpersuasive Plaintiff's argument that her expert's testimony creates a genuine issue of material fact regarding how long the syrup remained on the floor.

Specifically, Plaintiff's expert, William Marletta, indicated in his report that the spilled syrup must have existed on the floor for "at least an hour, if not several hours" prior to the accident. That assessment, however, appears based on the erroneous factual assumption that the spilled syrup had already dried up around the time of the accident.[4] (Marletta Dep. at pp. 56-57; Ex. J. (pl. expert disclosure) at p.4). As Plaintiff herself testified, she noticed neither heel or skid marks nor track or cart marks through the puddle of syrup and the only foot print she observed was her own. (Pl. Dep. at pp.103-04.) Further, as noted at page two of this memorandum and order, Plaintiff testified that at least part of the syrup was still wet enough that it was "running" and "moving."

The portion of Plaintiff's testimony on which Dr. Marletta relied appears to refer to Plaintiff's description of the syrup after she arrived at the hospital. At her deposition, Plaintiff testified that the syrup stuck to the bottom of her shoes appeared "dried" and "sticky" only after she had arrived in the emergency room of Beth Israel Hospital.[5] (Pl. Dep. at p.85). Plaintiff further testified that an ambulance arrived to assist her ten to fifteen minutes following the occurrence of the slip-and-fall incident and that the medical personnel who arrived in the ambulance stayed on the site of the accident for an additional ten to fifteen minutes after their

---

[4] Plaintiff's expert witness stated the following in his written opinion:

> It is my professional opinion to a reasonable degree of certainty as a certified safety professional that this condition of the spilled liquid has existed for an extended period of time. It is my professional opinion to a reasonable degree of certainty as a certified safety professional that in order for [the spilled syrup] to *dry up* and become sticky this have [sic] have been on the floor for at least an hour, if not several hours.

(Ex. J. at p.4) (emphasis added).

[5] Plaintiff made the following statement at her deposition when questioned as to how her knowledge that the syrup was sticky came about: "Because in Beth Israel Hospital, when my daughter looked at my shoes [the syrup] was dried."

arrival.[6] (Pl. Dep. at pp.153-54). In addition, Plaintiff testified that she stayed in the emergency room of Beth Israel Hospital for over six hours. (Pl. Dep. at p.159). Based on this testimony, it is unclear how much time had elapsed between when the accident occurred and when Plaintiff looked at her shoes in the emergency room. As Dr. Marletta's conclusion appears to ignore Plaintiff's description of the syrup at the scene of the accident and is instead based only on her later description of the syrup, his conclusion that the syrup had been on the floor for an extended period of time is insufficient to satisfy Plaintiff's burden. *See Ascher v. Target Corp.*, 522 F.Supp.2d 452, 460-61 (E.D.N.Y. 2007) (finding expert opinion insufficient to defeat summary judgment where expert's report was prepared without speaking to the plaintiff or reading her deposition transcript and was, in actuality, "based on incorrect assumptions of fact.").

Thus, viewing as it must all admissible evidence in the light most favorable to Plaintiff, the court finds that no reasonable inference can be drawn that the spilled syrup had existed on the floor of aisle E41 for "a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Tenay*, 2008 WL 2329302, at *2. The totality of admissible evidence indicates that the spilled syrup appeared fresh, clear, was not dirty and exhibited no marks, tracks or footprints in it, and that an inspection of the relevant area had been performed approximately half an hour prior to the occurrence of the accident. Plaintiff has therefore failed to meet her burden of proof by proffering countervailing evidence to demonstrate that the spill had existed for a sufficient length of time as to constitute a basis for imputing constructive notice to Defendant. *See Mueller v. Hannaford Bros. Co.*, 713 N.Y.S.2d 789, 789

---

[6] An additional unspecified amount of time must have, as a matter of logic, elapsed between the time of Plaintiff's departure from the Target store and the time of her arrival in the emergency room.

(2000) (finding insufficient evidence for constructive notice because evidence established that the location of the accident "had been cleaned approximately an hour to an hour and a half prior to the accident" and that "there was no indication that the [spilled liquid substance] was dirty or had any footprints through it, nor any other evidence that the [spilled liquid substance] was there for any appreciable length of time").

**Recurrent Dangerous Condition**

As discussed above, a plaintiff may also demonstrate that a defendant had constructive notice of a dangerous condition on its premises by demonstrating a recurring condition. *See Riley*, 2006 WL 3826729, at *1; *Weisenthal*, 545 N.Y.S.2d at 369 ("When a landowner has actual knowledge of the tendency of a particular dangerous condition to reoccur, he is charged with constructive notice of each specific reoccurrence of that condition.") For example, if "a defendant landowner negligently allowed the floor of his premises to become dangerous as the result of an accumulation, over the course of several days," of a dangerous condition or substance, then the defendant may be charged with constructive notice of the condition. *Weisenthal*, 545 N.Y.S.2d at 369.

In the instant case, there is no evidence of any prior instance of a slip-and-fall accident caused by spilled syrup on the floor of aisle E41. (Def. Aff. at p.37). In fact, Plaintiff acknowledged at her deposition that she was not aware of any prior accident involving spilled syrup at the subject Target store.[7] (Pl. Dep. at p.139). Absent other similar occurrences, a single

---

[7] Q. Are you aware of any instances before your accident where someone else had slipped on syrup spilled on the floor?

A. No.

(Pl. Dep. at p.139).

incident involving spilled syrup can hardly constitute the basis for charging Defendant with constructive notice of recurring syrup spills in the subject Target store.

Plaintiff argues that evidence indicating weekly occurrences of fallen DelMonte fruit cups in aisle E41 constitutes proof of a recurrent dangerous condition based upon which Defendant may be found to have had constructive notice of the syrup spill. (Yisrael Dep. at p.49). The court disagrees. "Because a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused Plaintiff's injury, liability could be predicated only on the failure of Defendant to remedy the danger presented by the liquid after actual or constructive notice of the condition. *Piacquadio*, 646 N.E.2d at 796. Here, the record contains no evidence that Defendant had either actual or constructive notice of the existence of the hazardous condition that caused Plaintiff to slip and fall. *See Riley*, 2006 WL 3826729, at *1 (concluding that defendant did not have constructive notice where defendants had only a "general awareness" of leaks on their premises but there was no evidence that the leaks recurred in distinctly identifiable areas); *Yearwood v. Cushman & Wakefield*, 742 N.Y.S.2d 661, (2nd Dep't. 2002) (concluding that the defendant did not have constructive notice of a puddle on the floor because it was aware only of a "general condition" that water recurrently leaked into the lobby due to rainy weather and there was an "absence of proof as to how long this puddle of water was on the floor.").

In sum, Plaintiff has not established that Defendant possessed any "actual knowledge of the tendency of [syrup spills] to reoccur" and has failed to demonstrate that syrup spills were a recurring dangerous condition such that Defendant should be held liable.

## *CONCLUSION*

Because Plaintiff has failed to establish a *prima facie* case for premises liability against

Defendant, specifically by means of demonstrating constructive notice on the part of Defendant, Defendant's motion for summary judgment is granted in its entirety.

**SO ORDERED.**

s/ SLT

SANDRA L. TOWNES
United States District Judge

Dated: Sept. 27, 2012
Brooklyn, New York